which the writ was granted may be taken in the return," and that a motion to set aside the alternative writ, for any matter not involving the merits, must be made at a term where the writ might have been granted. These provisions justify the inference that an objection to the sufficiency of the papers may be taken in the return, or presented at a Special Term of the court before the return day.

Motion to set aside writ granted.

(119 App. Div. 531)

### McCOY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 1, 1907.)

1. MASTER AND SERVANT—INJURY TO SERVANT—QUESTIONS FOR JURY.

In an action against a railway company for injury to plaintiff, a railway employé, caused by a hostler moving a locomotive while he was under it, whether the company was negligent and whether plaintiff was guilty of contributory negligence *held*, under the evidence, questions for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1001, 1089–1132.]

2. SAME—WEIGHT OF EVIDENCE.

In an action against a railway company for injury to plaintiff, a railway employé, caused by a hostler moving a locomotive while he was under it, *held*, that a verdict for plaintiff was not against the weight of the evidence.

3. DAMAGES—EXCESSIVE—PERSONAL INJURIES.

Nine thousand three hundred and thirty-eight dollars and sixty cents was not an excessive verdict, where plaintiff's leg was amputated half way between the foot and the knee, he was at a hospital seven weeks, suffered great pain, and had many bed sores, and after healing the stump of the leg continues to cause him great pain, and he has difficulty in wearing an artificial leg; he being 45 years old, and having before the accident had good health and been able to do all kinds of manual labor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 372–396.]

Williams, J., dissenting.

Appeal from Trial Term, Monroe County.

Action by Ryerson McCoy against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and an order denying its motion for new trial, defendant appeals. Affirmed.

The action was commenced on the 8th day of July, 1903, to recover damages for injuries sustained by the plaintiff, alleged to have been caused solely through the negligence of the defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and KRUSE, JJ.

Daniel M. Beach, for appellant.
C. D. Kiehel, for respondent.

McLENNAN, P. J. The action has been twice tried. Upon the first trial a nonsuit was granted at the close of plaintiff's case. Plaintiff made a motion for a new trial, which was directed to be heard at the Appellate Division in the first instance. This court unanimously overruled the plaintiff's exceptions and denied his motion for a new

trial. 100 App. Div. 513, 91 N. Y. Supp. 1102. Thereafter permission was given by a member of the Court of Appeals to appeal from our decision to that court, and upon such review the decision of this court was reversed and a new trial ordered (185 N. Y. 276, 77 N. E. 1174); Judge Edward T. Bartlett writing the opinion of the court. Upon such new trial the plaintiff recovered the verdict upon which the judgment now appealed from was entered. A careful examination of the record in this case and in the former appeal shows that there is practically no difference in the two records so far as the plaintiff's case is concerned, and therefore it follows that under the decision of the Court of Appeals the plaintiff has established a cause of action, unless the evidence introduced by the defendant is of such a character as to establish a defense to the cause of action proved by the plaintiff as matter of law, or else of such a character as to make the verdict of the jury contrary to or against the weight of the evidence. We think such is not the effect of the evidence offered by the defendant, and therefore that the judgment appealed from should be affirmed.

The material facts are not very much in dispute. The plaintiff at the time in question was employed by the defendant as a hoer of ashes from engines. It appears that in the yard of the defendant, when it was desired to clean an engine, a hostler would run the engine onto a track, there being at the time no ashpits in the yard and a hoer would then be ordered to go under the engine. The hostler would dump or shake the ashes into the ashpan below, and it was the duty of the hoer to hoe them out onto the track; he being under the engine upon his knees. It was the custom, which had been established between the hoer and the hostler, that, when the hostler had finished shaking down the ashes into the ashpan, he would ring the bell to inform the hoer of that fact; that, when the hoer had removed all the ashes from the ashpan, he would crawl out from under the engine, would then say to the hostler, "All right," which indicated that he had gotten out from under the engine, or would show himself to the hostler at the cab; and the hostler was then free to move the engine as he desired. This had been the manner or custom of performing this work during all the time the plaintiff was in defendant's employ. On the evening in question, it being then somewhat dark, and there being several engines in the yard and about the engine in question, which were making more or less noise, the plaintiff went under an engine, which was in charge of a hostler by the name of Lyon, to rake out the ashes in the ordinary way. Lyon gave the signal indicating that he had dumped the engine and shaken the ashes into the ashpan, and after the plaintiff had raked out the ashes he started to crawl out between the wheels of the engine, and while thus getting out Lyon started the engine; and the wheel ran over the plaintiff's leg, injuring it in such manner as that it had to be amputated between the ankle and the knee. The plaintiff at the time in question gave no signal to the hostler that he had gotten out from under the engine. He did not say, "All right," and did not show himself at the cab.

These are the facts, in a general way and so far as important to note, which were established by the plaintiff upon this trial and which were proven upon the previous trial; the evidence in the two records being

practically identical. The Court of Appeals said, upon the appeal from the former decision (page 284 of 185 N. Y., page 1176 of 77 N. E.) :

"In the case before us we have a state of facts differing in many particulars from those presented in any of the cases cited. It is obvious that the physical conditions surrounding the plaintiff when engaged in his work exposed him to great peril. As before pointed out, the mode of procedure adopted by the men was that, when all the ashes were shaken down, the hostler would announce the fact verbally or by ringing the bell of the engine. Thereupon the hoer, after finishing the work, would remove his tools and himself to a place of safety and announce the fact to the hostler, by calling out 'All right,' or exhibiting himself in person. In view of the great peril surrounding this work, a rule promulgated by the company might be well printed among its general rules, requiring the hoer to reach a place of safety in sight of the hostler. The confusion and noise existing in a railroad yard, where engines and cars are in almost constant motion and steam escaping to a greater or less extent, renders it hazardous to trust to the calling out of the hoer that he has reached a place of safety. The hostler might be misled by the noise and confusion, and mistakenly assume that he had heard the voice of his associate. We are of opinion that it was a question of fact for the jury as to the duty of the defendant to have promulgated a written rule, in view of the dangerous surroundings of the work of hoers of ashes and cinders underneath engines, and whether its failure to do so was negligence, rendering it liable to the plaintiff in damages for the injuries he sustained."

The language quoted, which practically embodies the decision of the court, applies with equal force to the situation and facts as described by plaintiff's witnesses upon this trial. The defendant, however, called a witness, George Colburn, who was engine dispatcher, and who was the superior officer of the hostler, and he testified in answer to the question :

"Tell us what instructions, if any, you gave to the hostlers with reference to cleaning out locomotives when the hoers were underneath? A. The instructions given were a general instruction to the men in that employment. The hostlers were to satisfy themselves that the engine hoers were out from under any engine, and that they knew it before they start the engine. I gave such instructions to the hostlers."

And it also appeared by testimony offered on behalf of the defendant that a practice had been adopted of signaling between the hoer and the hostler practically as testified to by the witnesses called on behalf of the plaintiff. There is no evidence on the part of the defendant tending to show that any particular rule had been promulgated as to the manner in which the hostler should satisfy himself that the men were out from under the locomotive and safe, but the men of their own accord adopted the practice or custom above indicated. It does not seem to me that the fact that the engine dispatcher gave the instructions which he testifies he did to the hostlers meets the criticism made by Judge Bartlett in his opinion delivered upon the former appeal. The effect of the holding in that case is that the defendant was required to have promulgated a written rule which should emphasize, as it were, the importance of seeing to it that no one was under the engine when started. I fail to see how the evidence of Colburn changes in the slightest degree the case from what it was upon the former appeal.

Lyon, the hostler, who was called as a witness by the defendant, also testified in substance that he knew the plaintiff was under the en-

gine, or had not come out from under it at the time that the engine was
started, and in effect that the engine was started by him by mistake,
and because he released the air brake when he ought not to have
done so.    The testimony of Lyon upon this question is not entirely
satisfactory and convincing.    He was in defendant's employ at the
time of the trial, and he was directly responsible for the accident, and
we think the jury had a right to disbelieve his evidence in that regard.
It appeared that he was in a hurry to get the engine cleaned out, and
it is quite consistent with all the circumstances that he moved the en-
gine, for the moment forgetting that the plaintiff was underneath.
But again, if a rule had been adopted by authority of the defendant re-
quiring the hostler to do some particular act to ascertain whether the
hoer was under the engine before starting the same, he would be much
less liable to interfere with the engine in such manner as that by any
possibility it could be moved until he had performed such act specified
in such rule.    The promulgation of such rule would tend to make the
hostler more careful in the performance of a duty which was attended
with so much danger to a co-employé.    I conclude, upon this branch
of the case, that the question of defendant's negligence and of plain-
tiff's freedom from contributory negligence were for the jury (Mc-
Coy v. N. Y. C., 185 N. Y. 276, 77 N. E. 1174), and that it cannot be
said that their verdict in plaintiff's favor upon those issues is contrary
to or against the weight of the evidence.

It is also urged that the verdict is excessive, and that for that
reason a new trial should be granted.    An extended discussion of the
proposition cannot be useful, because the facts are plain and undisputed.
At the time of the accident plaintiff was 45 years of age.    His health
prior thereto had always been good.    He was able to do all kinds of
manual labor.   ·He weighed about 165 pounds.    His leg was amputated
half way between the foot and the knee.    He was at the hospital seven
weeks.    He says that he suffered great pain; that he had many bed
sores.    He says that after the stump of the leg healed it continued to
cause him great pain, and so continues up to the present time, and that
he had difficulty in wearing an artificial limb.    It does not seem to me,
under such circumstances, that it can be said that the verdict is ex-
cessive.    It follows that the judgment and order appealed from should
be affirmed, with costs.

Judgment and order affirmed, with costs.    All concur, except WIL-
LIAMS, J., who dissents on the ground that it sufficiently appears
that Lyon, the hostler, knew the plaintiff was under the engine at the
time he started it, which he did by accident.